FILED

MAY - 7 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re<br><br>SHEILA WALL,<br><br>      Debtor. | Case No. 08-92658-A-13G<br><br>Docket Control No. TPH-3<br><br>Date: May 4, 2009<br>Time: 1:30 p.m. |

**MEMORANDUM**

The debtor seeks to value her home in order to strip off a junior secured claim. See In re Zimmer, 313 F.3d 1220 (9th Cir. 2002) and In re Lam, 211 B.R. 36 (B.A.P. 9th Cir. 1997).

It is undisputed that this property is encumbered by Wells Fargo's first deed of trust, which secures a loan balance of approximately $351,332. If the debtor's $300,000 valuation is correct, the junior secured claim of Jenny Bick is completely under-collateralized. See 11 U.S.C. § 506(a)(1).

The debtor's home is located in Oakdale, California. It sits on a .46 acre parcel, is 1,442 sq. ft., and is approximately 20 years old. In the debtor's opinion, her home has a value of $300,000.

Ms. Bick objected to the debtor's $300,000 valuation. Her objection initially maintained, on the strength of an appraisal by Theresa Smith, a licensed real estate appraiser, that the

debtor's home had a value of $414,000.

The debtor, in turn, procured her own appraisal. In the opinion of Craig Blevins, a certified residential appraiser, the debtor's home is worth only $219,000. His appraisal also noted that Ms. Smith's appraisal contained material factual errors.

- Ms. Smith reported that the home was not connected to a gas utility and instead relied upon propane.
- The flood map used by Ms. Smith was outdated.
- Ms. Smith incorrectly reported that the property was zoned R-1 rather than the correct zoning, A-2-10.
- And, most significantly, Ms. Smith's appraisal was based on the assumption that the home sat on 1.422 acres rather than the correct lot size of .46 acre.

According to Mr. Blevins, the last error was the most significant because it led Ms. Smith to choose comparable comparison properties that were much larger than the debtor's home.

Given the conflicting valuations, the court conducted an evidentiary hearing in order to determine value. Prior to the evidentiary hearing, Ms. Smith revised her appraisal in light of Mr. Blevin's criticisms. She adjusted her valuation down to $409,000.

After reviewing all of the appraisals and considering the testimony of both appraisers, the court agrees with the debtor's position that Ms. Smith's appraisal (both of them) is not reliable.

First, there are the admitted errors pointed out by Mr. Blevins.

Second, although Ms. Smith's appraisal noted that the market for home sales was declining, her appraisal made no adjustment for that market condition. Her explanation for this was not convincing.

Equally unconvincing was Ms. Smith's argument that even though her initial appraisal assumed a 1.422 acre lot size, this error was irrelevant to value because anything over approximately one-half acre was just surplus land with no value. While residential additional acreage might not have the same value as acreage that can be committed to commercial use, it defies logic and credulity to suggest that it has no value to a rural home buyer.

Finally, there is a problem with Ms. Smith's appraisal that even Mr. Blevins did not note. Some of her comparable sales, nos. 4 and 5, are not actual sales. They are sale listings, not actual sales. In a market where sales are slow and significantly influenced by foreclosure sales and bank sales, the court concludes that utilizing listings, as opposed to sales, is likely to lead to an over-estimation of value.

Turning to Mr. Blevins' appraisal, the only material criticism leveled against it is the fact that some of his sales comparisons are bank sales. That is, however, a reflection of the current market and it makes no sense to exclude them. Even if the use of these sales meant that Mr. Blevins understated market value, the court notes that the motion asks the court to value the property at $300,000, not $219,000 as Mr. Blevins has opined.

The court concludes that the fair market value of the

subject property is no more than $300,000. Therefore, Ms. Bick's junior secured claim is completely under-collateralized. No portion of her claim will be allowed as a secured claim. See 11 U.S.C. § 506(a)(1).

Because Ms. Bick's claim is completely under-secured, no interest need be paid on the claim except to the extent otherwise required by 11 U.S.C. § 1325(a)(4). If a secured claim is $0, because the collateral for the claim has no value, no interest need be paid pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).

To the extent Ms. Bick may object to valuation of her collateral in a contested matter rather than an adversary proceeding, the objection is overruled. Valuations pursuant to 11 U.S.C. § 506(a) and Fed. R. Bankr. P. 3012 are contested matters and do not require the filing of an adversary proceeding.

Further, even if considered in the nature of a claim objection, an adversary proceeding is not required. Fed. R. Bankr. P. 3007. It is only when such a motion or objection is joined with a request to determine the extent, validity or priority of a security interest, or a request to avoid a lien that an adversary proceeding is required. Fed. R. Bankr. P. 7001(2).

In connection with the valuation of Ms. Bick's collateral, the court is not determining the validity of her claim or avoiding her deed of trust. Her deed of trust will remain of record until the plan is completed. This is required by 11 U.S.C. § 1325(a)(5)(B)(i). Once the plan is completed, if Ms. Bick will not reconvey her deed of trust, the court will entertain an adversary proceeding. See also 11 U.S.C. §

1325(a)(5)(B)(i).

In the meantime, the court is merely valuing Ms. Bick's collateral. Rule 3012 specifies that this is done by motion. Rule 3012 motions can be filed and heard any time during the case. It is particularly appropriate that such motions be heard in connection with the confirmation of a plan. The value of collateral will set the upper bounds of the amount of the secured claim. 11 U.S.C. § 506(a). Knowing the amount and character of claims is vital to assessing the feasibility of a plan, 11 U.S.C. § 1325(a)(6), and determining whether the treatment accorded to secured claims complies with 11 U.S.C. § 1325(a)(5).

For the foregoing reasons, the court determines that the subject property has a fair market value of $300,000, and that the property, after deducting the senior lien, provides no security for Ms. Bick's claim.

Dated: 7 May 2009

By the Court

Michael S. McManus, Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Dan Nelson
PO Box 1770
Stockton, CA 95201

Thomas Hogan
1207 13th St #1
Modesto, CA 95354

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: May 7, 2009

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus